UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLOW SPRINGS OPERATOR, LLC,<br>Plaintiff, | Case No. 3:19-cv-00035 (BRM/DEA) |
| v. | |
| USI INSURANCE SERVICES, LLC;<br>SEAN HOOD; LISA OLSON; HEALTH<br>CAP RRG; CHELSEA-RHONE, LLC;<br>and HEALTH CARE INDUSTRY<br>LIABILITY RECIPROCAL<br>INSURANCE COMPANY, A RISK<br>RETENTION GROUP,<br>Defendant(s). | **AFFIDAVIT OF<br>MERITOURIOUS CLAIM** |

1. I, Shabsi Kahan the affiant hereby certify and affirm that the following statements are true to the best of my knowledge and experience.

2. I am a licensed insurance broker. I have practiced within the insurance area for many years. My experience includes; broker for 4 years. within the State of NJ plus many other states, I engage in the regular sale, writing and issuance of all types of P&C insurance I am in good standing and have always retained my status as such within the State of New Jersey. I also serve in the supervisory role as broker over 10 of agents at this brokerage.

3. I have been asked to review the Plaintiff's Complaint in this case, along with certain other documents in order to render this Affidavit as to whether the actions of the licensed professional Defendants in this case violated the standard of care within this insurance industry.

4. The entire list of documents I reviewed in preparation for this Affidavit include: (1) The Plaintiff's complaint; (2) the Complaint in the underlying litigation at Paul Lattarulo v. Willow Springs, Docket # OCN-L-802-17; (3) the policy issued by Health Cap at policy number HRG-NH01-007-CM-01; (4) the Pending and Prior Litigation and Occurrence Known Exclusion Endorsement for policy number HRG-NH01-007-CM-01; and (5) the Declination of Coverage letter dated May 30, 2017 from the Defendant in this current case.

5. As a result of my review, it is my position that if the facts are as set forth within the Complaint in this case, then the Plaintiff has established that the licensed professionals here have, in fact, breached the standard of care for licensed professionals within this industry.

6. Specifically, I make note of the following statements in the Complaint with my comments and conclusions as to the breach of the standard of care:

   (a) Paragraphs 9 through 16, along with paragraph 107-112, all say that the licensed professionals failed to <u>inform</u> Willow Springs that the new policy would contain "an endorsement or exclusion for pending or prior litigation and known incidents or occurrences." Moreover, these same paragraphs say that the licensed professionals

failed to <u>inquire</u> in any manner whether or not there were any pending or prior litigation and known incidents or occurrences. These paragraphs identify as the parties who made both of these failures (both to inform and to inquire): USI, Mr. Hood, Ms. Olsen, and HealthCap/ Chelsea-Rhone. Failure to inquire as to pending/ prior litigation and known incidents/ occurrences, along with the failure to inform of such exclusion within a new policy, could result in such catastrophic results for a client that such failure must be deemed a breach of the standard of care within the insurance industry. It is standard industry practice to both (a) inform of such policy exclusion, and (b) inquire as to whether there are any such pending/ prior litigations and known incidents/ occurrences.

(b)   I also note that within the Complaint it says, "the USI agents including Hood and Olson filled out the application and checked the box "no" for any pending or known litigation or incidents." (See paragraph 12.) Not asking or having your client fill out the application themselves, and instead completing the application yourself without any inquiry as an agent/ broker, and without any confirmation by the insurer that it was filled out by the client, is surely a breach of the standard of care within the insurance industry by its licensed professionals. These facts and allegations of not doing so form a meritorious claim because these alleged actions are, and will constitute, a breach of the standard of care within this industry.

(c)   I also note that in Paragraphs 11 and 20 the Complaint says that the licensed professionals failed to provide a copy of the policy (or draft) both during the application process and upon completion and issuance of the policy. While it can be debated whether failure to provide a draft <u>during</u> the application process is a breach of the standard of care, it certainly is a breach of the standard of care to fail to provide the policy <u>upon its issuance</u>. Moreover, in this context of the failure to inform and/ or inquire as stated in 6(a) and 6(b) above, the failure to provide a draft would be of increased importance, and such failure to provide a draft would only exacerbate and increase the potential harm from the failure to inform and/ or inquire as to pending/ prior litigation and known incidents/ occurrences.

(d)   The Complaint also alleged a failure to investigate the needs of the client (here the Plaintiff Willow Springs) and sets forth that client is a nursing home (residential skilled nursing facility) and thus would require special insurance needs. While the phrase "failure to investigate the needs" might be open ended, in this context it is my position that if this means not asking about potential claims, pending claims, and possible acts that might fall under this category that is standard, regular and traditional for a nursing home as an insured facility -- including common events in a nursing home such as patient slips and fall incidents, patient injuries, and the like -- then this, too, will rise to the level of not assessing the needs of your client and not advising as to potential insurance needs. This would breach the standard of care within the industry. A licensed professional would and should be asking those questions specific to this industry: Have any patients been harmed recently? fallen? incurred injuries? slipped out of bed? slipped on a floor? fallen out of a wheelchair? and the like. This would be standard practice. Failure to ask these types of questions breaches such standard practice.

(e)   Within the Complaint it alleges that the licensed professionals did not inquire as to any past or pending litigation, or any incidents or occurrences, and it specifically says

that it failed to inform that a "records request" from an attorney might trigger or constitute notice of a claim or potential claim. In my experience, and within this industry, I might not necessarily agree that a records request from an attorney would normally trigger such "notice of a claim or potential claim". However, *when read together* with the denial letter of the insurer, and the fact that such attorney record request was deemed to trigger notice to Willow Springs so as to result in the claim denial itself, then these licensed professionals should know and be charged with knowledge of what the denial grounds would be and could be for their particular insurer and for their particular policy they are writing, and thus it leads me to conclude that failing to know these denial grounds, failing to inquire as to such potential denial grounds (e.g., whether there were any attorney records requests – is an attorney request will trigger the notice), and failing to give your client notice of this, all together would constitute a breach of the general standard of care that should be extended by the licensed professionals of this insurance industry.

(f)     Finally, I note that the Complaint alleged that the licensed professionals committed negligence by failing to advise Willow Springs to either (a) purchase tail coverage from its prior insurer due to the new policy's endorsement for the exclusion for pending/ prior litigation or known occurrences/ incidents, or (b) renew its existing policy in order to avoid any coverage lapse due to the new policy's endorsement for the exclusion for pending/ prior litigation or known occurrences/ incidents. This claim would probably be read and analyzed in tandem with the prior claim that the licensed professionals failed to inform Willow Springs of the endorsement, and failed to inquire as to any pending/ prior litigation or known occurrences/ incidents. If they failed to inquire/ investigate and failed to inform, then certainly Willow Springs would be seen as buying a policy that has such exclusion without knowing of the exclusion, and as a licensed professional it would be a breach of care to not address this – either through (a) inquiring; (b) advising of the exclusion; and as a result (c) providing options to avoid this significant harm through either purchased tail coverage or renewal of the former policy. If none of these were done, then it would be a breach of the standard of care.

I hereby certify and affirm, under penalty of perjury, that the foregoing statement made by me are true to the best of my knowledge. I am aware that if such facts are willfully false, I may be subject to punishment.

Dated: 5/22/2019          By: _____
                                    [name]