NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLOW SPRINGS OPERATOR, LLC | |
| Plaintiff, | |
| | Case No.: 3:19-cv-35-BRM-DEA |
| v. | |
| | OPINION |
| USI INSURANCE SERVICES, LLC, *et al.* | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is (1) Plaintiff Willow Springs Operator, LLC ("Willow Springs") Motion to Remand. (ECF No. 3.) All Defendants[1] oppose the motion. (ECF No. 4.) Having reviewed the parties' submissions filed in connection with the motions and having heard oral argument pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below and for good cause having been shown, the Motion to Remand is **DENIED**. Additionally, because the record does not reflect the citizenship of the parties formed as limited liability companies, Defendants must **SHOW CAUSE** why this case should not be remanded for lack of subject matter jurisdiction under 28 U.S.C. § 1332.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Willow Springs[2] operates a residential skilled nursing facility in New Jersey. (Compl.

---

[1] There are two sets of Defendants to this action. The first set includes USI Insurance Services, Inc. ("USI") and its licensed insurance producers Sean Hood and Lisa Olson (collectively, the "Broker Defendants"). The second set includes HealthCap RRG ("HealthCap"), Health Care Industries Liability Reciprocal Insurance Company, a Risk Retention Group ("HCILRIC"), and Chelsea-Rhone, LLC ("Chelsea-Rhone") (collectively, the "Insurance Defendants").

(ECF No. 1-2) ¶ 1; Answer (ECF No. 6) ¶ 1.) In May 2015, Willow Springs' patient Paul Lattarulo[3] suffered an injury at Willow Springs' facility. (ECF No. 1-2 ¶¶ 22-23.) In January 2016, Lattarulo's attorneys requested that Willow Springs provide them with Lattarulo's medical records but did file any claim or initiate any lawsuit. (*Id.* ¶ 24.) Willow Springs reported Lattarulo's injury and his attorneys' request for medical to the insurance agent it had at the time. (*Id.* ¶ 27.)

Willow Springs also began a search for new liability insurance. In the fall of 2016, the Broker Defendants assisted Willow Springs with purchasing new insurance from the Insurance Defendants.[4] (*Id.* ¶¶ 2, 4-6; ECF No. 6 ¶¶ 2, 4-6.) The resulting insurance policies were effective December 1, 2016 to December 1, 2017, with coverage retroactive to December 1, 2014. (ECF No. 1-2 ¶ 8.)

Lattarulo sued Willow Springs on March 15, 2017, and served Willow Springs on April 7, 2017. (Id. ¶ 31-32.) Willow Springs filed an insurance claim in relation to Lattarulo's lawsuit. (*Id.* ¶ 38.) The Insurance Defendants denied the claim on the ground that the policy barred claims for prior or pending litigation, or known incidents or occurrences, and that the Lattarulo's attorneys' request for Lattarulo's medical records should have been sufficient for Willow Springs

---

[2] Willow Springs is a New Jersey limited liability company with a principal place of business in New Jersey. (Cert. of Anthony L. Velasquez (ECF No. 3-1) ¶¶ 3-4.)

[3] Lattarulo is not a party to this action.

[4] USI is a limited liability company organized under Delaware law with a principal place of business in New York. (Notice of Removal (ECF No. 1) ¶ 5(a).) Sean Hood resides in New Hampshire. (*Id.* ¶ 5(b).) Lisa Olson resides in Massachusetts. (*Id.* ¶ 5(c).) HealthCap is a corporation organized under District of Columbia law with a principal place of business in Michigan. (*Id.* ¶ 5(d).) HCILRIC is a corporation organized under District of Columbia law with a principal place of business in Michigan. (*Id.* ¶ 5(e).) Chelsea-Rhone is a limited liability company organized under Michigan law with a principal place of business in Michigan. (*Id.* ¶ 5(f).)

to disclose Lattarulo's injury as a claim. (*Id.* ¶¶ 38-39.)

Willow Springs filed this suit in the Superior Court of New Jersey, Ocean County, Law Division, against both the Broker Defendants and the Insurance Defendants, asserting Negligence, Breach of Duty of Good Faith and Fair Dealing, Fraud, Wrongful Claim Denial, and Professional Malpractice. (*Id.* ¶¶ 42-117.) The Broker Defendants, later joined by the Insurance Defendants, removed this case to this Court, alleging diversity of citizenship. (ECF No. 1 ¶¶ 5, 7; Letter from Gerard H. Hanson, Counsel for Insurance Defendants (ECF No. 12), at 1 (Feb. 15, 2019).) Willow Springs moved to remand this case to State Court. (ECF No. 3.)

## II. LEGAL STANDARD

When a Defendant removes a case to federal court, the Court must remand the case back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "[R]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (quoting *Batoff v. State Farm Ins. Co.*, 977 F. 2d 848, 851 (3d Cir. 1992)). The removing defendants bear the burden of establishing diversity jurisdiction. *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013). Although this matter arises in the context of a motion to remand, "federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

## III. DECISION

### A. Direct Actions

Willow Springs argues that this Court lacks diversity jurisdiction because complete

diversity does not exist between the parties.[5] Specifically, Willow Springs contends this is a direct action against an insurance company, in which the insurance company (HealthCap) is deemed to be a citizen of the same state as its insured (Willow Springs). *See* 28 U.S.C. § 1332(c). Because this is an action by an insured against its own insurer, rather than an action in which the liability imposed against the insurance company could also be imposed against the insured, this case is not a "direct action" as that term is used in § 1332(c).

This Court has jurisdiction over cases between "citizens of different states." *Id.* § 1332(a)(1). To qualify for so-called "diversity" jurisdiction, "the parties must be completely diverse, meaning that 'no plaintiff can be a citizen of the same state as any of the defendants.'" *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)).

Generally, a corporation takes on the citizenship of "both its state of incorporation and the state of its principal place of business." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). "[T]he citizenship of an LLC is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). However, "in any direct action" removed from state court "against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant," the insurer-defendant also takes on the citizenship of the "State . . . of which the insured is a citizen." 28 U.S.C. § 1332(c)(1)(A).

Congress added the "direct action" language in 1964. *See* Pub. L. 88-439, 78 Stat. 445, 445 (1964). "The purpose" of the legislation was "to eliminate under the diversity jurisdiction of

---

[5] Willow Springs also argued (Pl.'s Legal Br. (ECF No. 3-3), at 3-4) that the amount in controversy did not exceed the $75,000 jurisdictional threshold, *see* 28 U.S.C. § 1332(a), but conceded at oral argument that the amount in controversy now clearly exceeds the threshold.

the district courts suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant." H.R. Rep. No. 88-1229, at 1 (1964)[6]; *see also* 110 Cong. Rec. 9313 (statement of Rep. Celler).

When Congress enacted this legislation, Louisiana and Wisconsin both permitted tort plaintiffs to sue directly a tort-feasor's insurance company without requiring that the plaintiff join the actual tortfeasor as a defendant. H.R. Rep. No. 88-1229, at 2; 110 Cong. Rec. 9312 (1964) (statement of Rep. Smith of Virginia). These "direct action" statutes frequently enabled plaintiffs to invoke federal diversity jurisdiction against out-of-state insurance companies, because without such a statute, plaintiffs would have had to join the in-state tortfeasors, thereby destroying complete diversity. H.R. Rep. No. 88-1129, at 2; 110 Cong. Rec. 9313 (1964) (statement of Rep. Celler).

Consequently, "a stupendous amount of" state law tort litigation "clogg[ed] the calendars" of the U.S. District Court for the Eastern District of Louisiana. 110 Cong. Rec. 9313 (statement of Rep. Celler). Immediately preceding the enactment of this legislation, "[m]ore civil cases [were] filed per judgeship in this district than in any other district in the country." H.R. Rep. No. 88-1129, at 3. That court's weighted caseloads per judgeship were 150% greater than the national average, and other than a capital-area Virginia district (approximately 90% greater than the national average), "[n]o other district [came] anywhere near to approaching the eastern district of Louisiana's civil caseload." *Id.* at 3. Of the civil cases filed in that district, only 9% involved the United States; the remaining 91% involved only private litigants

---

[6] The Judiciary Committee's report in the Senate is nearly identical to the report of its counterpart in the House of Representatives. *Compare* S. Rep. No. 88-1308 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 2778, *with* H.R. Rep. No. 88-1229 (1964). To avoid cluttering this opinion with citations, the Court will cite only the House report.

(compared to 67% nationally). *Id.* at 5. Of all the civil cases in the Fifth Circuit more than three years old, the Eastern District of Louisiana held 60%—even though the judges of that district frequently terminated cases at a rate exceeding the national average per judgeship. *Id.* at 6.

Congress blamed Louisiana's direct action statute. *Id.* at 2; 110 Cong. Rec. 9314 (1964) (statement of Rep. Celler). Lawmakers heard evidence that Louisiana attorneys preferred federal court litigation to state court litigation, in part because "the State appellate court is not bound as the Federal appellate courts are by the findings of a jury in a lower court." H.R. Rep. No. 88-1229, at 4-5; *see also* 110 Cong. Rec. 9316 (statement of Rep. Mathias) (noting that the Louisiana Constitution requires that "all appeals shall be both upon the law and the facts").

Members also took note that while Wisconsin had a direct action statute, Wisconsin's law limited its application to automobile negligence actions, and its state court procedures prohibited appellate review of a jury's findings of fact. 110 Cong. Rec. 9316 (statement of Rep. Kastenmeier). As a result, "the filing of suits under the direct action statute of that State ha[d] not imposed any undue burden upon the Federal district courts therein." H.R. Rep. No. 88-1229, at 2; *see also* 110 Cong. Rec. 9316 (1964) (statement of Rep. Kastenmeier) (observing that the legislation was unlikely to "seriously affect Wisconsin practice").

While chiefly concerned about conserving scarce judicial resources, lawmakers also doubted that these direct actions belonged in federal court at all. The House committee report wrote "that the existence of this [direct action] statute in Louisiana and in Wisconsin does not come within the spirit or the intent of the basic purpose of the diversity jurisdiction of the Federal judicial system." H.R. Rep. No. 88-1229, at 7. Members of Congress debating the bill opined, "there is no reason why these actions should not be brought in the State courts and jurisdiction foreclosed as far as the Federal courts are concerned." 110 Cong. Rec. 9314

(statement of Rep. Celler); *see also id.* at 9316 (statement of Rep. Boggs) (arguing that these direct actions "ought to be in the State courts").

Courts have kept this history in mind when deciding the scope of the statutory language. *See, e.g.*, *Chiaravalle v. Imperium Ins. Co.*, No. 13-1818, 2013 WL 4012552, at *2 (D.N.J. Aug. 2, 2013) (discussing the legislative history of the "direct action" statutory language). Courts regularly conclude "that a 'direct action,' as that term is used in § 1332(c), does not exist 'unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured.'" *McGlinchey v. Hartford Accident & Cas. Co.*, 866 F.2d 651, 653 (3d Cir. 1989) (quoting *Myers v. State Farm Ins. Co.*, 842 F.2d 705, 707 (3d Cir.1988)). The statute "does not include suits by an insured against his or her own insurer." *Brooks-McCollum v. State Farm Ins. Co.*, 321 F. App'x 205, 208 (3d Cir. 2009); *accord Cruz v. GEICO*, No. 17-CV-12765, 2018 WL 1610956, at *2 (D.N.J. Apr. 3, 2018).

Willow Springs' action is not a "direct action" because Willow Springs, an insured, brings suit against its own insurer. *Brooks-McCollum*, 321 F. App'x at 208. Additionally, Willow Springs' action is not a direct action because the liability it seeks to impose on insurer HealthCap could not be imposed on insured Willow Springs. *McGlinchey*, 866 F.2d at 653.

This conclusion accords with Congress' purpose in enacting the "direct action" proviso to § 1332(c). This is not an action "in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant." H.R. Rep. No. 88-1229, at 1. While New Jersey has a direct action statute, no party contends that the statute applies here. *See* N.J. Stat. Ann. § 17:28-2 (authorizing direct actions by plaintiffs against insurance companies *in the event the insured is insolvent or bankrupt*). Nor has that statute threatened to overwhelm this Court with

litigation that would otherwise be within the exclusive jurisdiction of the New Jersey courts. *Cf.* H.R. Rep. No. 88-1229, at 2-7.

Willow Springs contends this Court should apply the statute's "plain language," which "does not appear to be limiting so as to exclude a direct action between the insured and the insurer." (Pl.'s Reply Br. (ECF No. 11), at 1.) Whatever the merits of this argument, this Court must follow the mandate of the Third Circuit. *Brooks-McCollum*, 321 F. App'x at 208; *McGlinchey*, 866 F.2d at 653; *see also* Evan H. Caminker, *Why Must Inferior Courts Obey Superior Court Precedent?*, 46 Stan. L. Rev. 817, 824 (1994) ("District courts must follow both Supreme Court decisions and those issued by whichever court of appeals has revisory jurisdiction over its decisions . . . .").

Because this is not a direct action as that term is used in the statute, HealthCap takes on the citizenship only of its state of incorporation (the District of Columbia) and the state of its principal place of business (Michigan). *See* 28 U.S.C. § 1332(c)(1).

### B. Citizenship of Limited Liability Companies for Diversity Purposes

However, the inapplicability of the diversity jurisdiction statute's "direct action" provision does not end this Court's inquiry. "[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co.*, 836 F.3d at 267 (quoting *Arbaugh*, 546 U.S. at 514). In a case like this resting on diversity jurisdiction, this Court must determine for itself whether or not every defendant is completely diverse from the plaintiff. *See Auto-Owners Ins. Co.*, 835 F.3d at 394.

As explained above, a corporation takes on the citizenship of its state of incorporation and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). Corporate defendant HealthCap therefore is a citizen of the District of Columbia (where it is

incorporated) and Michigan (where it maintains its principal place of business). Likewise for the other corporate defendant: HCILRIC is a citizen of the District of Columbia (where it is incorporated) and Michigan (where it maintains its principal place of business).

However, plaintiff Willow Springs and defendants USI and Chelsea-Rhone are limited liability companies, not corporations. "[T]he citizenship of an LLC is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). If the members are themselves limited liability companies (or partnerships, or trusts, or unincorporated associations, etc.), this Court may need to trace the parties' citizenship through multiple layers of entities. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 n.16 (3d Cir. 2015).

The Court cannot determine whether or not diversity jurisdiction exists over this case because there is insufficient evidence of the citizenship of plaintiff Willow Springs and defendants Chelsea-Rhone and USI. The record in this case contains no information about the citizenship of Willow Springs' or Chelsea-Rhone's members. USI has filed a corporate disclosure statement, explaining that USI's sole member is USI Holdings Corp. (USI's Corp. Discl. Stmt. (ECF No. 1-4), at 1.) USI Holdings Corp. is presumably a corporation; if so, then USI is a citizen of both the state of incorporation of USI Holdings Corp. and the state where USI Holdings Corp. maintains its principal place of business—both matters about which the record contains no information.

Given the limited record, the Court cannot determine whether or not it possesses diversity jurisdiction. Ambiguity concerning the existence of subject matter jurisdiction generally bars an action from proceeding in federal court, given that the removing defendants bear the burden of establishing diversity jurisdiction and all doubts about jurisdiction must be resolved in favor of

remand. *A.S.*, 769 F.3d at 208; *Johnson*, 724 F.3d at 346. However, where the party invoking the Court's jurisdiction "may be able to allege facts sufficient to demonstrate that this Court has subject matter jurisdiction to entertain [its] state law claims under diversity of citizenship jurisdiction," the Court may allow that party to bolster the record with additional evidence sufficient to remove any ambiguity concerning the Court's jurisdiction. *Phillip v. Atlantic City Med. Ctr.*, 861 F. Supp. 2d 459, 470 (D.N.J. 2012). This Court will exercise that discretion, allowing Defendants to supplement the record with evidence of the citizenship of all of the members of each party formed as a limited liability company.

### IV. CONCLUSION

For the reasons set forth above, Willow Springs' Motion to Remand (ECF No. 3) is **DENIED**. Additionally, Defendants must **SHOW CAUSE** why this case should not be remanded for lack of subject matter jurisdiction under 28 U.S.C. § 1332 because the record does not reflect the citizenship of the parties formed as limited liability companies. An appropriate order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: June 27, 2019